UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                Petitioner,

            -against-

VISIONPRO NETWORKS, INC.,

                Respondent.
------------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

24-MC-00356 (JMA) (JMW)

**A P P E A R A N C E S:**

> Anastasia Doherty, Esq.
> **Equal Employment Opportunity Commission**
> New York District Office, Boston Area Office
> 15 New Sudbury St Rm 475, Ste 2000
> Boston, MA 02203
> *Attorney for Petitioner Equal Employment Opportunity Commission*
>
> Scott R. Green, Esq.
> **Goldberg Segalla LLP**
> 200 Garden City Plaza, Suite 520
> Garden City, NY 11530
> *Attorney for Respondent VisionPro Networks, Inc.*
>
> Charles Albert Lazo, Esq.
> **Goldberg Segalla LLP**
> 711 Third Avenue, Suite 1900
> New York, NY 10017
> *Attorney for Respondent VisionPro Networks, Inc.*

**WICKS,** Magistrate Judge:

Petitioner, United States Equal Employment Opportunity Commission ("EEOC"),

commenced this suit solely seeking to compel the enforcement of an administrative subpoena

*duces tecum* upon Respondent VisionPro Networks, Inc.  (ECF No. 1; ECF No. 2 at 5.)

Petitioner's motion to compel is opposed by Respondent (ECF No. 13.)  Additionally, Respondent filed a motion for leave to file a sur-reply or an order requesting that the Court otherwise disregard Petitioner's argument regarding successor liability in its reply. (ECF No. 15.)  Petitioner strenuously opposes Respondent's request.  (ECF No. 16.)

For the reasons that follow, the undersigned recommends **GRANTING in part and DENYING in part** both Petitioner's motion to compel (ECF No. 1) and Respondent's motion for leave to file a sur-reply (ECF No. 15.). [1]

## BACKGROUND

***The Underlying Title VII Investigation***

VisionPro is "a cable television service company based in Farmingdale, New York, which contracted with cable providers to handle installation, repair, and service for cable providers' customers" in the tri-state area.  (ECF No. 2 at 6-7.)

The Charging Party, that is the person who initiated the EEOC investigation against Respondent, began working for Respondent on October 18, 2021 as an Installation Technician and was promised "a $2,000 sign-on bonus, full-time work hours, an hourly minimum wage, and commission pay based on the number of installations."  (ECF No. 2 at 7.)  She asserts that Christian Rivera, her supervisor, consistently made sexual comments to her when she would ask for help with her work.  (ECF No. 2 at 7); (ECF No. 3 at 9) (Ex. A: Affidavit of Charging Party) (citing statements that Rivera said he would "start charging [her] in kiss[es]" when she requested assistance with work tasks and would request photos of the Charging Party).  As a result of her

---

[1] Although the Hon. Joan M. Azrack referred the instant motions to the undersigned for adjudication (*see* Electronic Order dated Apr. 12, 2024), a Magistrate Judge can only address a motion to enforce an administrative subpoena by way of report and recommendation ("R&R").  *See NLRB v. Bacchi*, MC 04-0028 (ARR) (MDG), 2004 U.S. Dist. LEXIS 20763, at *1 (E.D.N.Y May 19, 2004) ("[A] motion to enforce an administrative subpoena must be addressed by a magistrate judge on a report and recommendation basis.").  Accordingly, the undersigned respectfully submits this as an R&R.

rejecting Rivera's advances, her hours were reduced and she was terminated on August 24, 2022. (ECF No. 2 at 7.)

***The Charging Party's Charge of Discrimination with the EEOC***

On August 24, 2022, the Charging Party filed an administrative Charge of Discrimination with the EEOC against VisionPro, her former employer, alleging that it discriminated against her based on her sex. (ECF No. 2 at 6.) Specifically, she alleges that the company:

> (1) discriminated against her based on sex by subjecting her to ongoing sexual harassment at the hands of her supervisor, Christian Rivera; (2) discriminated against her based on sex by denying her a $2,000 sign on bonus and by assigning her fewer jobs than her male counterparts; and (3) retaliated against her for opposing Mr. Rivera's sexual advances, by reducing her hours and discharging her from her position.

(ECF No. 2 at 6.) The Notice of Charge of Discrimination was sent to VisionPro on September 4, 2022, which included a clause regarding its preservation of records. (ECF No. 3 at 11) (Ex. A: Notice of Charge of Discrimination.)

VisionPro in turn stated that: (1) Charging Party was "ineligible" for the bonus because she was not experienced enough and she is to blame for her reduced work hours compared to her male counterparts because she could have requested more hours; (2) the Charging Party and Rivera were in a "consensual romantic relationship" and VisionPro was unaware of it and subsequently demoted Rivera to a non-supervisory role as a result; and (3) that Rivera did not have any authority to influence her employment. (ECF No. 2 at 7-8.)

***The EEOC's Attempts to Retrieve the Information***

On January 10, 2024, the EEOC served Requests for Information upon Respondent's counsel, which requested information related to the harasser/harassment, including communications between the Charging Party and Rivera, and information related to VisionPro's

3

other Installation Technicians that performed work in Connecticut since October 1, 2021.[2]  (ECF No. 2 at 8); (ECF No. 3 at 27-30) (Ex. C: EEOC's requests for information.)

Nearly one month later, VisionPro responded that its legal name was VisionPro Networks, Inc. and that the Charging Party officially reported to a facility in the Bronx, not Connecticut.  (ECF No. 2 at 9); (ECF No. 3 at 32) (Ex. D: Respondent's responses to the EEOC's requests for information.)  It further claimed it had no responsive documents containing communications with Rivera, related documents to the investigation, or even Rivera's demotion. (ECF No. 2 at 9.)  Respondent refused to provide information about other Installation Technicians, stating the request was overly broad and was beyond the investigation's scope. (*Id*.); (*see generally* Ex. D: Respondent's responses to the EEOC's requests for information.)

The EEOC then sought more information, this time seeking a list of and other related information to VisionPro Installation Technicians in the New York tri-state area.  (ECF No. 2 at 9); (ECF No. 3 at 40-42) (Ex. E: Follow-up request for information.)  The EEOC additionally requested a conference with VisionPro to discuss the deficiencies with the first document request.  (ECF No. 2 at 9); (ECF No. 3 at 44) (Ex. F: Email between EEOC officer and VisionPro counsel dated April 3, 2023.)  VisionPro requested an extension of time to respond

---

[2] This category sought a host of information including:

> an employee list with full name, last known contact information, sex, job title, and dates of tenure, and reason for separation if applicable; time and payroll records for these individuals for the time period of October 1, 2020, to present; whether each technician had received a $2,000 sign-on or other bonus at any point since October 1, 2020; the weekly schedules for these individuals for the time period of October 1, 2021 to October 1, 2022; and, employment applications materials and, performance review, evaluations, or assessments, for these individuals for the time period of October 1, 2020 to present.

(ECF No. 2 at 8.)

until May 1, 2023.  (*Id.*); (ECF No. 3 at 49) (Ex. G: Request for extension of time dated April 11, 2023.)

However, counsel withdrew for VisionPro on April 21, 2023.  (ECF No. 2 at 9); (ECF No. 3 at 55) (Notice of withdrawal of counsel for Respondent.)  The EEOC followed up with VisionPro via email and certified mail about the requests for information but received no response.  (ECF No. 2 at 10); (ECF No. 3 at 57) (Ex. J: Email to Respondent's contact dated April 28, 2023); (*Id.* at 65) (Ex. K: Mail to Respondent's contact dated May 15, 2023.)  It was only on May 19, 2023, that Joseph Romano, President of VisionPro, told the EEOC that VisionPro's assets had been sold.  (ECF No. 2 at 10); (ECF No. 3 at 76) (Ex. L: Email confirming conversation with Romano from May 19, 2023); (*see also* ECF No. 14-2 at 4) (Romano's LinkedIn page.)  The EEOC Investigator asked Romano to comply with the information requests and even offered an extension.  (ECF No. 2 at 10.)  The investigator cautioned Romano that failure to comply would result in the issuance of a subpoena.  (*Id.*)  Romano responded, "If you feel you want to get a subpoena then do it."  (*Id.*); (ECF No. 3 at 78) (Ex. M: Email from Romano dated June 1, 2023.)

Prior to the EEOC's filing for subpoena enforcement in this Court, on June 14, 2023, the EEOC issued Subpoena No. NY-A23-010 through its Boston Area Office Director, Feng "Ken" An, "in connection with an administrative investigation being conducted pursuant to Title VII of the Civil Rights Act of 1964."  (ECF No. 2 at 5.)  Romano was the recipient of the subpoena.  (*Id.*)[3]

---

[3] The subpoena had 11 requests including information related to: Rivera's application for employment as well as his demotion; communications between the Charging Party and Rivera; facilities owned by VisionPro; individuals employed as Installation Technicians including those who received a sign-on bonus since October 1, 2020; and payroll records from October 1, 2020 through the present.  (ECF No. 2 at 10-12.)

On June 21, 2023, VisionPro objected to the subpoena with a Petition to Modify, citing overbreadth, irrelevance, and an undue burden as grounds for non-compliance with the requests. (ECF No. 2 at 5, 13); (ECF No. 3 at 82-86) (Ex. N: EEOC Subpoena); (ECF No. 4 at 3-11) (Ex. P: Respondent's Petition to Modify.)  In noting the subpoena's relevance as well as lack of overbreadth and an undue burden, VisionPro was ordered to comply with the subpoena within two weeks.  (ECF No. 2 at 5); (ECF No. 4 at 40-58) (Ex: Q: Determination of Respondent's petition to modify.)

VisionPro subsequently requested two extensions of time to comply with the subpoena but failed to comply at all to Request Nos. 2, 5-7, and 9-10.  (ECF No. 2 at 5); (ECF No. 4 at 161) (Ex. R: Request for extension of time dated October 27, 2023); (*id.* at 163) (Ex. S: Request for extension of time dated November 13, 2023.)  As to Request No. 2, the EEOC states that VisionPro failed to preserve the responsive information and is only now attempting to collect it. (*Id.*)  For Request Nos. 5 and 9-10, VisionPro has wholly refused to provide responsive information, stating that the requests "improperly expand the investigation" and that because VisionPro was administratively dissolved in March 2023, it is difficult to respond to these requests, though the information is indeed accessible. (*Id.*)  And as for Request Nos. 6-7, the EEOC alleges that VisionPro has "partially complied" by providing payroll records from 2020 through 2022.  (*Id.* at 6.); (ECF No. 5 at 34-58) (Ex. C: Payroll Records.)

On November 30, 2023, the EEOC confirmed that Romano still has access to many of the documents requested—such as payroll records—and holds the title of Chief Executive Officer at the new VisionPro entity.  (ECF No. 2 at 14.)  Counsel for VisionPro even informed the EEOC that "VisionPro was reticent to invest resources into complying with a subpoena directed at the dissolved entity."  (*Id.*)  VisionPro reiterates, though, that "the current VisionPro entity is not a

successor by any legal definition." (*Id*.)  Nonetheless, it still operated two New York facilities and Rivera was still working for the company.  (*Id*.)

The outstanding requests are as follows:

- Request No. 2: Use a third-party vendor to collect from a company-issued phone all communications between Rivera and Charging Party, between October 1, 2021, and present, and produce these communications

- Request No. 5: Provide an employee list for all Installation Technicians employed by VisionPro to work in Connecticut, New York, or New Jersey, between October 1, 2021, to present, that includes the sex, job title, assigned facility/supervisor, date of hire and, if applicable separation and reason or separation; and last known address and contact information for each employee.

- Request Nos. 6 and 7: Supplement payroll production with any payroll records from 2023 and with additional information as to which employees received sign-on bonuses.

- Request Nos. 9 and 10: Provide employment applications and performance reviews dating back to October 1, 2020, for all Installation Technicians employed by VisionPro to work in Connecticut, New York, or New Jersey, between October 1, 2021, to present.

(ECF No. 2 at 15.)

## THE PARTIES' CONTENTIONS

### A.  Motion to Compel

The EEOC seeks an Order from the Court compelling Respondent "to produce all documents and information in response to Subpoena NY-A23-010" issued on June 14, 2023 and granting Petitioner costs incurred in enforcing the subpoena.  (ECF No. 1 at 1.)  It states that its motion should be granted for several reasons as set forth below.

*First*, the EEOC alleges that the investigation is being conducted pursuant to a legitimate purpose, that is, it is investigating valid claims of sex discrimination and retaliation under Title VII.  (ECF No. 2 at 17.)  *Second*, the EEOC claims the requests are relevant to the investigation's purpose—namely that VisionPro violated Title VII.  (*Id*.)  The requests can additionally support the Charging Party's claims of harassment, retaliation, lack of bonus pay, and unequal job

assignments. (*Id*. at 19.) The EEOC also alleges that, in addition to relevance, the geographic and temporal scope of the requests are appropriate, especially for purposes of seeking out comparators. (*Id*. at 21.)

 *Third*, the EEOC is not already in possession of the documents it seeks. (ECF No. at 24.) The payroll records already provided by VisionPro do not delineate which individuals received a sign-on bonus. (*Id*.) VisionPro also objects that no communications between Rivera and the Charging Party exist because it does not have her company phone. However, the EEOC states that VisionPro, not the EEOC, "has the obligation to preserve and produce this evidence." (*Id*. at 25.) The EEOC requests that "should VisionPro wish to collect responsive information to Subpoena Request 2 from Charging Party's company-issued phone, that it be ordered to use a third-party electronically stored information (ESI) vendor to forensically examine" the phone." (*Id*.) *Finally*, the EEOC states that it has followed all procedures required to issue the instant subpoena and provide the Court with jurisdiction. (*Id*. at 26.)

 Separately, the EEOC says that compliance would not be unnecessarily burdensome for VisionPro. (ECF No. 2 at 26.) Specifically, VisionPro has since been dissolved so no business operations would be disrupted, and its conclusory statements of time consumption and expense are insufficient here. (*Id*. at 27.) Further, VisionPro still has access to the documents since Romano acts as an executive and the new entity has the same address as the old one. (*Id*. at 28.)

### ***VisionPro's Opposition***

 VisionPro in turn argues that the requests across multiple states bear no relevance on the allegations here. (ECF No. 13 at 5.) Further the Charging Party's conclusory complaints should not entitle her to such a broad stroke of discovery of a "defunct" entity. (*Id*. at 6.) Specifically, the requests seek information about all Installation Technicians in New York, New Jersey, and

Connecticut but the Charging Party worked in Connecticut only.  (*Id*. at 16.)  And as to comparators, the Charging Party does not name any other technicians to compare her jobs or hours to nor does she describe a pattern or practice of discrimination.  (*Id*. at 16-17.)  Each facility and state had different business needs and work hours so the employees in those states cannot be used as comparators to the Charging Party regardless.  (*Id*. at 17.)  And as to the temporal scope, the subpoena requests information predating and beyond the period of employment, which was less than a year—from October 2020 to August 2022—which is overbroad and inappropriate.  (*Id.* at 18.)

As to relevance for the specific requests, VisionPro states that Request No. 2—the request for all communications between the Charging Party and Rivera—the EEOC has not limited appropriately it to allegations of discrimination only.  (ECF No. 13 at 19.)  Request Nos. 5, 9, and 10 seek irrelevant details such as contact information, work locations, and employee applications which are irrelevant to the discrimination and retaliation allegations.  (*Id*.)

Respondent emphasizes that as part of its winding down process, it disposed of unnecessary documents and information and shredded private employees' documents but preserved materials related to the Charging Party's allegations.  (ECF No. 13 at 8.)  The remaining requests, it says, pertain to documents or information that never existed or no longer exist.  (*Id*.)  Nonetheless, VisionPro alleges that it has complied with its obligations and the EEOC is now in receipt of all responsive documents.  (ECF No. 13 at 20.)  It can even obtain the communications from the Charging Party if needed or subpoena Rivera.  (*Id*.)  Additionally, compliance would be unduly burdensome given that VisionPro is "defunct" and Romano would have to review and produce all responsive information for the outstanding requests.  (*Id*. at 20-

21.)  Finally, costs should be denied since VisionPro acted in good faith to comply with the investigation process.  (ECF No. 13 at 21.)

### *The EEOC's Reply*

The reply focuses on VisionPro's admission that it destroyed employment records and has exhausted its search for responsive information.  (ECF No. 14 at 1-2.)

*First*, EEOC states that it is learning for the first time that documents have been destroyed.  (ECF No. 14 at 1-2.)  The EEOC states that it still has access to the files despite its ceasing operations in 2022.  (*Id*. at 3.)  Romano still holds an executive title to VisionPro and its companies and that VisionPro still has facilities in New York and New Jersey and even employs some of the same employees.  (*Id*. at 4-5.)

*Second,* VisionPro has not exhausted its efforts to comply with the subpoena.  (ECF No. 14 at 6.) If so, VisionPro must provide an affidavit stating the efforts/searches it has undergone including interviewing various personnel, reviewing employee records and company emails, and searching facilities.  (*Id*. at 2, 7.)

*Finally*, the Respondent should pay the costs incurred in this action to compel given the multiple extensions of time it was given to comply, and the baseless and consistently rejected objections and withholding of information and knowledge, including that it destroyed documents during the dissolution.  (ECF No. 14 at 15.)

### B.  Motion for Leave to File a Sur-Reply

Respondent seeks leave to file a sur-reply to the EEOC's motion to compel or in the alternative, requests that the Court disregard the arguments the EEOC first raises in its reply—namely that VisionPro Connections, Inc. is Respondent's successor.  (ECF No. 15.)  It states that

the EEOC's failure to bring this up in its original application is a waiver of any successor liability claims and VisionPro likewise did not raise this in its opposition.  (*Id.*)

The EEOC responds stating that it did not raise new arguments in its reply and even emphasized that it is "not required to prove successor liability in order to obtain information relevant to its investigation" and VisionPro does not need to be a successor for the Court to enforce the subpoena.  (ECF No. 16.)  The EEOC states it set out the various VisionPro entities to respond to VisionPro's argument that it exhausted all efforts to comply with the subpoena. (*Id.*)  It states that VisionPro is still capable of gathering the requested information despite its dissolution.  (*Id.*)  Thus, Respondent's request should be denied because it did not raise new arguments nor is successor liability at issue.

**DISCUSSION**

**A. Motion to Compel**
    **a. The Legal Framework**

"The district court's role in a proceeding to enforce an administrative subpoena is extremely limited."  *EEOC v. UPS*, 587 F.3d 136, 139 (2d Cir. 2009).  To achieve enforcement of its subpoena, the agency need only show:

> [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within [the agency's] possession, and [4] that the administrative steps required . . . have been followed.

*Id.*; *NLRB v. Am. Med. Response, Inc.,* 438 F.3d 188, 192 (2d Cir. 2006) (same).  The Court next considers whether the EEOC has sufficiently demonstrated these four factors.

    **b. Application**
        **i. Legitimate Purpose**

At the outset, the undersigned notes this element does not appear to be disputed by Respondent.  Cases have found legitimate purposes where Title VII or equivalent claims are

11

alleged.  *See Sunbeam Appliance Co., etc. v. Kelly*, 532 F. Supp. 96, 100 (N.D. Ill. 1982) (stating that "the subpoena was issued pursuant to three charges of employment discrimination properly before the EEOC" including alleged race and sex discrimination in Sunbeam's wage, promotion, discharge and lay-off practices); *EEOC v. Bessemer Group Inc*., 105 Fed. Appx. 411, 414 (3d Cir. 2004) (finding that there was a legitimate purpose behind the EEOC's investigation to look into whether Bessemer's practices violated the ADEA and that the very purpose of [an administrative] subpoena…is to discover and procure evidence, not to prove a pending charge or complaint").

Like the court stated in *Bessemer*, the subpoena is solely to gather evidence at this juncture—not to decide the merits of the Charging Party's underlying case.  Accordingly, in viewing the Charging Party's allegations of discrimination and retaliation under Title VII, it is clear that the EEOC's subpoena has a legitimate purpose in investigating the claims to determine whether any malfeasance was committed.  *Su v. Pamper Our Parents, Inc*., 2:23-mc-03225 (NJC), 2024 U.S. Dist. LEXIS 15466, at *12 (E.D.N.Y. Jan. 29, 2024) (finding a legitimate purpose where the subpoena was part of an investigation to determine whether respondent violated the FLSA).

Furthermore, a valid charge is a condition precedent to issuing a subpoena.  *EEOC v. Quad/Graphics*, 63 F.3d 642, 646 (7th Cir. 1995).  The EEOC would not have issued the subpoena in the first place had it not initially and internally already determined that the Charging Party had a valid charge.  Thus, the first element should be deemed satisfied by the EEOC.

### ii.  Relevant to the Purpose

The parties sharply dispute the general relevance of the subpoena requests.

"In connection with any investigation of a charge . . ., the Commission . . . shall at all reasonable times have access to . . . any evidence of any person being investigated or proceeded against that relates to unlawful employment practices . . . and is relevant to the charge under investigation." *EEOC v. Sterling Jewelers, Inc*., 11-mc-00028-(A)(M), 2011 U.S. Dist. LEXIS 126585, at *9 (W.D.N.Y. Nov. 2, 2011) (quoting 42 U.S.C.A. § 2000e-8).

"At the investigatory stage, notions of relevancy are very broad. So long as the E.E.O.C. is not wandering into wholly unrelated areas…the Co[]mmission has the power to investigate and thus subpoena documents concerning any employer practice which may shed light on the discrimination charge." *EEOC v. Pan American World Airways*, No. M 18-304, 1983 U.S. Dist. LEXIS 18739, at *7-8 (S.D.N.Y. Mar. 8, 1983); *Sterling Jewelers, Inc*., 2011 U.S. Dist. LEXIS 126585 at *9 (stating that the EEOC has been granted access "to virtually any material that might cast light on the allegations against the employer"). Nevertheless, although "the notions of relevancy in an EEOC investigations are broad" they "are not limitless." *Id*. at *10.

Additionally, courts tend to defer to the agency's determination of relevancy "which must be accepted so long as it is not obviously wrong" —"an exceedingly low burden." *Acosta v. Fusilli at Miller Place, Inc*., 18-mc-426 (DRH)(SIL), 2018 U.S. Dist. LEXIS 77641, at *10 (E.D.N.Y. May 7, 2018).

Here, all of the information is relevant to ultimately ferreting out the merits of the Charging Party's claims of discrimination and retaliation. Indeed, the EEOC already went through its own conclusions as to the sufficiency of the subpoena when the Respondent initially challenged it. Upon an internal review of the Respondent's objections, including relevance, the EEOC ordered Respondent to produce the documents requested. (ECF No. 13 at 10.)

<u>Request No. 2: Communications Between the Charging Party and Rivera</u>

The EEOC argues that the information from this request could demonstrate a hostile work environment based on sex.  (ECF No. 2 at 18.)  With the information, the EEOC can review all communications to fully assess whether Rivera made unwanted sexual comments and innuendos or whether the two had a consensual relationship.  (*Id*. at 18-19.)  VisionPro however, responds that Rivera never owned a company phone but used his personal phone and is also no longer employed by VisionPro.  (ECF No. 13 at 13.)  It also asserts that the EEOC can retrieve the information from the Charging Party herself, who has a company phone, and it should not be required to retain a third-party vendor to conduct a forensic search of the phone.  Finally, VisionPro states that the communications should be limited to the claims and defenses at issue— not all communications between Rivera and the Charging Party.  (*Id*. at 19.)

There are a handful of ways to retrieve the information here.  The first option would be to direct Rivera to produce the communications.  The second option would be to, as the EEOC suggests, obtain a third-party vendor to conduct a forensic search of the Charging Party's company phone.  However, VisionPro's resources are limited and it should not be required to pay this expense unless this is a last resort.

Thus, in light of Rivera's refusal to turn over the communications and given that he does not have a company phone, the Respondent must make efforts to obtain the information. Interestingly, Rivera's subordinates had a company phone and Respondent produced texts from *both* their *personal* and work phones.  (ECF No. 14 at 10-11.)  Therefore, it should bear the burden to get the materials, not the EEOC.  Further, the EEOC is a neutral party in this matter and cannot seize the Charging Party's work phone to search it.  (*Id*. at 11-12); *EEOC v. International Profit Assocs*., 206 F.R.D. 215, 220 (N.D. Ill. 2002) (stating the differences

14

between the EEOC as a neutral third party at the investigation stage as opposed to the determination stage if reasonable cause has been found).  Finally, VisionPro has not described in detail its efforts to obtain the material from Rivera.  *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 105 (S.D.N.Y. 2008) ("Unless it offers an adequate excuse, a party or non-party must obey a valid subpoena.").

As to the scope of this request, the communications may contain sexual innuendos and not explicit comments, obtaining all communications between Rivera and the Charging Party would be important for the EEOC to assess the claims and defenses here.

Accordingly, Request No. 2 is relevant and not overly broad.  It is recommended that the District Judge direct Respondent to make efforts to retrieve the information from Rivera by request.

Request Nos. 5-7 and 9-10: Information Related to VisionPro's Installation Technicians in Connecticut, New York, or New Jersey

The EEOC argues that it does not appear that VisionPro disputes the relevance of these requests and this information would constitute comparator and contextual evidence for Title VII claims, including the harassment, retaliation, bonus pay, and disparate job assignment claims. (ECF No. 2 at 19.)  Specifically, the payroll records and bonus payment information in Request Nos. 6-7 can show whether male technicians received bonus pay or were given more jobs than the Charging Party.  (*Id*. at 20.)  And the employment applications for other Installation Technicians can show if the Charging Party was rightfully denied the bonus based on her alleged lack of experience in comparison to others.  (*Id*. at 21.)

The EEOC states that although Respondent has produced payroll records, they lack critical information including the employees' position, title, job location, or a clear distinction as to whether they received a sign-on bonus.  (*Id*. at 20-21.)

The EEOC has demonstrated relevance of the requests as they relate to the Charging Party's various requests ranging from discrimination to retaliation.  Given their relevance, Respondent is directed to comply with the requests, including providing employees' position, title, and job location.  *See EEOC v. Sterling Jewelers, Inc*., 11-mc-00028-(A)(M), 2011 U.S. Dist. LEXIS 126585, at *9 (W.D.N.Y. Nov. 2, 2011) (stating that the EEOC can get access "to virtually any material that might cast light on the allegations against the employer").

Respondent states that "no employee had ever been granted a $2,000 sign-on bonus, as such an incentive was neither offered nor advertised."  (ECF No. 13 at 12.)  Accordingly, to the extent that VisionPro states it has exhausted its efforts to comply with the subpoena (ECF No. 14 at 6) or does not otherwise possess responsive documents, it must provide an affidavit stating the same, including whether it has undergone including interviewing various personnel, and reviewing employee records and company emails.  *Middle Mkt. Fin. Corp. v. D'Orazio*, No. 96 Civ. 8138 (SWK) (HBP), 1997 WL 394958, at *2-3 (S.D.N.Y. July 11, 1997) (requiring affidavit that no responsive documents exist); *Hannah v. Wal-Mart Stores, Inc*., 3:12CV1361 (JCH), 2014 U.S. Dist. LEXIS 75745, at *9 (D. Conn. June 3, 2014) (requiring plaintiffs to provide a sworn statement in their responses for defendants' requests for production that "after a diligent search, all responsive documents have been produced or that no responsive documents have been found").

Geographic Scope of Requests

The Charging Party was employed in Connecticut but reported to a facility in the Bronx. (ECF No. 2 at 22.)  Additionally, VisionPro technicians provided services to New Jersey customers.  Thus, the EEOC states that receiving information for all three states is relevant.  (*Id*.)

Furthermore, the Charging Party was the only woman in the Connecticut facility, so the EEOC must retrieve information about other female technicians at other facilities.  (*Id*. at 23.)

VisionPro, however, states that the requests are overbroad and should be geographically limited to Connecticut alone.  (ECF No. 13 at 16.)  The Charging Party also does not identify any comparators at any other facility.  (*Id*.)  Finally, each of these facilities had different hours and business needs, so her experience cannot be compared to others in any event.  (*Id*. at 16-17.)

In disparate treatment cases, obtaining company-wide information is "not without limits" and "the typical boundary for gathering information about an employer's practices concerning employees other than the plaintiff is the plaintiff[']s 'employing unit or work unit.'"  *Sundaram v. Brookhaven Nat'l Lab*., CV-94-2330 (TCP), 1996 U.S. Dist. LEXIS 22811, at *5 (E.D.N.Y. Mar. 11, 1996) (internal citations omitted).  "[D]iscovery in [Title VII actions] may appropriately be limited to employment units, departments and sections in which employees s*imilarly situated to plaintiff* are employed."  *Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 296 (W.D.N.Y. 1996) (emphasis added).

If a plaintiff alleges a company-wide policy, then discovery may encapsulate the "date on the treatment of comparably situated employees, not merely in the particular office in which the plaintiff worked, but in other locations as well."  *Mazzella v. RCA Global Communs., Inc*., No. 83 Civ. 3716 (WCC), 1984 U.S. Dist. LEXIS 18166, at *24 (S.D.N.Y. Mar. 28, 1984).

Here, in light of the differences in hours that each state/facility may have and because she was the only technician in Connecticut, the undersigned concludes that the requests should be limited to the all New York facilities (Bronx, Brooklyn, Long Island, Queen, and Yonkers) and Connecticut facilities, which would provide her with employees' work information in her same work location and would also include female technicians from a different facility located

elsewhere.  (*See* Ex. Q: Determination of Respondent's petition to modify at 10) (stating that the Charging Party's "employing unit may be construed as spanning both Connecticut *and* New York and the EEOC needs to expand its sampling to gather evidence for her gender discrimination claims) (emphasis in original); *see also Cronas v. Willis Group Holdings LTD*, 06 Civ. 15295 (GEL), 2008 U.S. Dist. LEXIS 81083, at *7 (S.D.N.Y. Oct. 8, 2008) (stating that nationwide discovery lead to a "fishing expedition" for plaintiff to search for other employees with similar discrimination claims); *In re Western Dist. Xerox Litigation*, 140 F.R.D. 264, 271 (W.D.N.Y. 1991) (denying company-wide discovery where plaintiffs already had full data for over 1,500 similarly situated employees).

Accordingly, the undersigned recommends limiting all requests to the New York and Connecticut facilities.

Temporal Scope of the Requests

The EEOC argues that VisionPro has already produced payroll records within the requested scope—thereby indicating that the timeframe is relevant.  (ECF No. 2 at 23.) VisionPro however objects to the timeframe—October 1, 2020 to the present—because it encompasses far more than the Charging Party's actual period of employment and is therefore inappropriate and overbroad. (ECF No. 13 at 18.)

In discrimination cases, it is not unusual for courts to grant discovery requests for time periods preceding and succeeding a plaintiff's term of employment.  *Jordan v. United Health Group*, 15-CV-00442-RJA-JJM, 2016 U.S. Dist. LEXIS 202532, at *6 (W.D.N.Y. June 17, 2016) (granting plaintiff's motion to compel time and attendance records for a one-year period preceding her termination); *Shannon v. Liberty Mut. Grp., Inc*., 3:20-CV-1192 (RNC), 2021 U.S. Dist. LEXIS 119766, at *57 (D. Conn. June 28, 2021) (finding plaintiff's request for information

before and after the company's reorganization to be relevant and proportional to the case's needs).

Here, the Charging Party was employed with Respondent from October 18, 2021 to August 24, 2022.  (ECF No. 2 at 6.)  When the EEOC sent its subpoena in June 2023, it requested documents from October 2020 through the present.  Therefore, the temporal scope should be granted as to the *original* request in the EEOC's subpoena: October 1, 2020 through June 30, 2023.  This scope is narrow, as it only captures a year before she began her employment with Respondent and a few months after she was terminated, and the requests have also been tailored geographically and are appropriately limited to include Installation Technicians only.

### iii.  Not in the EEOC's Possession

As explained above, the EEOC claims it does not have the requisite information needed. To the extent that Respondent has only partially complied with the requests, it need not re-send the materials such as the payroll records.  Rather, it must send to the EEOC a supplement with all the missing information it so requests.  And as to the communications including Rivera, though the Charging Party has a company phone, the EEOC cannot search the phone itself and Respondent must take steps to ensure full compliance.

### iv.  Administrative Steps Have Been Followed

This factor is uncontested, and the undersigned accordingly recommends that the Court find that all administrative steps have been duly followed.  The EEOC has provided a valid Charge of Discrimination and Respondent was provided with the Notice of Charge of Discrimination.  (ECF No. 3 at 7-12.)  Additionally, Respondent was properly served with the signed subpoena issued via a Director in the EEOC's Boston Area Office through Romano, an executive of VisionPro via certified mail.  (ECF No. 3 at 81-86); *see Perez v. ServiceMaster*

*Cleaning & Restoration by AMS*, MC 16-2100 (ADS)(AYS), 2016 U.S. Dist. LEXIS 160401, at *6 (E.D.N.Y. Nov. 18, 2016) ("Respondents have been served properly with a subpoena, [so] the necessary administrative steps have been taken."); *Su v. Pamper Our Parents, Inc*., 2:23-mc-03225 (NJC), 2024 U.S. Dist. LEXIS 15466, at *14-15 (E.D.N.Y. Jan. 29, 2024) (finding all steps followed by the Department of Labor where the subpoena was properly signed and issued by a regional administrator of the Wage and Hour Division and counsel was served the subpoena via email and fax).

### c. Compliance is Not Unnecessarily Burdensome

The EEOC argues that compliance will not disrupt business operations, because the company has since been dissolved (ECF No. 2 at 27).  Rather than state in a conclusory manner that compliance would be burdensome, Respondent must show how costs of compliance compare to normal operating costs that would lead to a disruption in business.  (*Id*.)  Nevertheless, the EEOC asserts that dissolution does not eliminate its obligation to comply.  (*Id*. at 28.)

Here, Romano still holds an executive role at VisionPro's new entity and VisionPro is still located at the same address.  (ECF No. 2 at 28-29); (ECF No. 14 at 4) (noting that its Bronx facility is still open.)  Accordingly, although compliance may be burdensome, given the limitations on the geographical and temporal scopes, it will not be *unnecessarily* burdensome.

Further, VisionPro's status as a defunct entity does not absolve it of its obligations to comply.  *United States v. Johnson*, 247 F.2d 5, 7 (2d Cir. 1957) (stating that upon dissolution, directors must preserve corporate records until their destruction is permitted and finding that dissolution of the corporation did not relieve the director of his duty to comply with the subpoena that required him to produce corporate records); *Petition of Emprise Corp*., 344 F. Supp. 319,

323 (W.D.N.Y. 1972) ("[D]ocuments of a dissolved corporation are subject to subpoena whether they are in the possession of either a successor corporation or individuals who were former owners or officers of that corporation."); *United States v. Medic House, Inc.,* 736 F. Supp. 1531, 1536 (W.D. Mo. 1989) (finding that responding failed to show that responding to the subpoena would be "too burdensome" because disruption of business operations was insufficient to avoid subpoena compliance).  Here, VisionPro had a duty to preserve the documents pertaining to the underlying EEOC matter and was even given notice to preserve these documents in the Notice of Charge.  (*See* Ex. A) (stating that "[t]he EEOC regulations require respondents to preserve all payroll and personnel records relevant to the charge until final disposition of the charge or litigation.")

Regardless, VisionPro has failed to carry its burden of showing that "the cost of gathering this information is unduly burdensome in light of the company's normal operating costs." *E.E.O.C. v. Morgan Stanley & Co., Inc.*, 132 F.Supp.2d 146, 161 (S.D.N.Y. 2000); *EEOC v. Sterling Jewelers, Inc.,* 11-CV-00938(A)(M), 2013 U.S. Dist. LEXIS 141489, at *25 (W.D.N.Y. Sept. 23, 2013) (finding that although respondent provided a cost estimate for compliance with the subpoena, it failed to "identify how this cost would present an undue burden for a retailer of its size"); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.,* 262 F.R.D. 293, 300 (S.D.N.Y. 2009) ("A party objecting to a subpoena on the ground of undue burden generally must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.") (quoting 9 James Wm. Moore et al., Moore's Federal Practice P 45.51[4] (3d ed. 2009)).  Respondent merely states that it no longer maintains an infrastructure or employees as a defunct entity and the burden of responding would fall solely on Romano, and finally that many of the documents do not exist or have been since shredded.  (ECF

No. 13 at 20-21.)  It has not submitted a breakdown of costs or time it would need to comply with the subpoena in order for the court to fully assess whether compliance would indeed by unnecessarily burdensome.

Accordingly, the Court recommends a finding that the subpoena's requests have been appropriately limited and will not be unduly burdensome for Respondent to comply.

### d.  Request for Costs to Enforce the Subpoena

The EEOC requests costs from Respondent it incurred in this action and the opportunity to submit a request for fees and costs along with supporting documentation.  (ECF No. 14 at 16.)

There exists no express statutory authority for the EEOC to be awarded costs for administrative subpoena enforcement proceedings.  However, the Federal Rules of Civil Procedure have been invoked to support similar requests like those here in administrative proceedings. *See NLRB v. Durham Sch. Servs., L.P.,* 3:14mc52/MCR/EMT, 2015 U.S. Dist. LEXIS 3333, at *5 (N.D. Fla. Jan. 12, 2015); *see also* Fed. R. Civ. P. 81(a)(5) (stating that the Federal Rules "apply you proceedings to compel..the production of documents through subpoena issued by a United States…agency").

Notably though, at least one court stated that the Federal Rules regarding reimbursement of costs and fees *do not* apply to EEOC enforcement of subpoena actions.  *See EEOC v. Deer Valley Unified School Dist.,* 968 F.2d 904, 906 (9th Cir. 1992) (quoting Fed. R. Civ. P. 45) ("[T]he history behind [Rule 45] suggests that it does not apply to enforcement of subpoenas issued by administrative officers."); *NLRB v. Lear Corp. Eeds & Interiors,* NO. 16-00061-WS-N, 2016 U.S. Dist. LEXIS 79271, at *39 (S.D. Ala. May 10, 2016) (citing *Deer Valley Unified School Dist.* and finding that the NLRB "is not entitled to an award of attorneys' fees" under Rule 37 or 45 for bringing this action); *NLRB v. Edwards,* 2:11MC3546-WKW, 2012 U.S. Dist.

LEXIS 9484, at *9 (M.D. Ala. Jan. 10, 2012), *report and recommendation adopted,* 2012 U.S. Dist. LEXIS 9483 (M.D. Ala. Jan. 25, 2012) (denying request for fees because this motion to compel the administrative subpoena did not involve a failure to cooperate in discovery or make required disclosures within Rule 37's meaning).  Notably, the EEOC does not cite any case law supporting an application for fees incurred by the EEOC in an enforcement proceeding like this. Rather, the EEOC cites the many months it has taken VisionPro to comply with the subpoena and the multiple extensions of time it has granted for VisionPro to comply as grounds to grant its request for costs (ECF No. 14 at 1.)  It states that VisionPro's delay with compliance has caused a delay with compliance as a whole, and relies generally on the Federal Rules.

Although the undersigned acknowledges that VisionPro has only haphazardly attempted to comply with the subpoena requests, it has not been *completely* radio silent throughout the course of this investigation.  For example, on February 15, 2023, it provided responses to the first set of requests for information.  (ECF No. 2 at 8.)  Then after a period in which VisionPro was no longer represented by counsel starting April 21, 2023, the EEOC received word from Romano less than one month later on May 19, 2023.  (*Id.* at 10.)  Once the subpoena was issued in June 2023, Respondent's new counsel submitted a motion to modify the subpoena (*id.* at 12-13) and thereafter requested extensions to comply (*id.* at 13).

Although some courts have granted attorney fees and costs for enforcement of agency-issued subpoenas in certain circumstances, *see NLRB v. DN Callahan, Inc.,* 18 MC 879 (LDH) (CLP), 2018 U.S. Dist. LEXIS 133888, at *16 (E.D.N.Y. Aug. 7, 2018), *report and recommendation adopted,* 2018 U.S. Dist. LEXIS 149214 (E.D.N.Y. Aug. 30, 2018) (awarding attorney's fees or costs associated with enforcing the subpoena where respondent "was given four opportunities and multiple extensions of time to provide the documents in response to the

subpoena and its failure to do so caused the Board to spend time and effort…in attempting to secure compliance with the subpoena"), the undersigned has not found a single case – nor has the EEOC cited any -- in which costs were awarded in cases involving the EEOC.  *See e.g., United States EEOC v. Laseraway Med. Grp., Inc.*, NO. 16-00061-WS-N, No. 22-MC-00246 SPG (RAO), 2023 U.S. Dist. LEXIS 130501, at *13 (C.D. Cal. Apr. 17, 2023), *report and recommendation adopted,* 2023 U.S. Dist. LEXIS 129212 (C.D. Cal. July 25, 2023) (denying the EEOC's requests for costs incurred in filing the application because there was no statutory authority or support awarding such costs despite respondent's cited "failure to engage in a good faith resolution of the requests for information and documents"); *see also Durham Sch. Servs., L.P.,* 2015 U.S. Dist. LEXIS 3333 at *6 (rejecting the portion of the report and recommendation to award attorney fees because respondent did not violate a discovery rule or disobey a court order).

Furthermore, as Romano was the only person assisting in collecting these documents since the company was dissolved, any delays are not unreasonable.  (*See* Ex. M: Email from Romano dated June 1, 2023) (stating that he is working on compliance with the subpoena "by [him]self" all while working "14 hours a day 7 days a week.")

Accordingly, the undersigned recommends denying the EEOC's request for costs.

**B. Motion for Leave to File a Sur-Reply**
   **a. Legal Standard**

Granting leave to a litigant to file such sur-replies is indeed rare.  *Kapiti v. Kelly*, No. 07-CV-3782, 2008 U.S. Dist. LEXIS 20135, at *1 n.1 (S.D.N.Y. Mar. 12, 2008) ("[T]he decision to permit a litigant to submit a [sur-reply] is a matter left to the Court's discretion, since neither the Federal Rules of Civil Procedure nor the Local Civil Rules of [the] court authorize litigants to file [sur-replies]."); *SEC v. Xia*, 21-CV-5350 (PKC) (RER), 2022 U.S. Dist. LEXIS 126176, at

*3 (E.D.N.Y. July 15, 2022) ("Courts in this circuit grant leave to file sur-replies *sparingly*.")

(emphasis added).  When neither the Court's Individual Rules nor the Local Civil Rules allow

filing supplemental documents after a motion is fully briefed and filed, courts will generally not

consider these supplemental papers.  *See Guity v. Uniondale Union Free Sch. Dist*. No. CV 15-

5693, 2017 U.S. Dist. LEXIS 27542, at *17-20 (E.D.N.Y. Feb. 23, 2017) (declining to consider

supplemental materials submitted after the briefing period was over because those filings were

not permitted by federal or local rules and plaintiff failed to seek leave from the court to file

these documents); *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc*., 170 F.R.D. 361, 369-

70 (S.D.N.Y. 1997) ("Because supplemental submissions are not authorized by the Federal Rules

of Civil Procedure, the Local Rules of the Southern District of New York, or this Court's

Individual Rules, and because this Court did not grant [the defendant] permission to supplement

its opposition papers, this Court will not consider [the] supplemental papers in resolving the

instant motions.").

A court may also strike portions of the reply as necessary where "the parties will have the

opportunity, through discovery and trial or future motion practice, to prove their respective

cases."  *Paz Sys. V. Dakota Grp., Corp.,* CV 05-4763 (LDW) (WDW), 2006 U.S. Dist. LEXIS

103301, at *12 (E.D.N.Y. June 16, 2006); *see also Kenney v. Clay*, 11-CV-0790, 172 F. Supp. 3d

628, 639 (N.D.N.Y. 2016) ("It is well settled that a district court is free to disregard argument

raised for the first time in reply papers…."); *Peralta v. CB Hosp. & Even*ts, LLC, 22-CV-10805

(GHW) (BCM), 2024 U.S. Dist. LEXIS 37509, at *14 (S.D.N.Y. Mar. 4, 2024) ("Since I am

disregarding the issues and evidence improperly raised for the first time in Villanueva's reply

papers, I also disregard defendants' sur-reply submissions.").

### b. Application

Upon the Court's review of the EEOC's reply (ECF No. 14), the undersigned finds that Plaintiff went to extreme lengths to discuss successor liability but then retreated on its nearly four full pages of successor liability analysis to state that it is not needed to retrieve the relevant documents in this investigation.  (*See* ECF No. 14 at 2-6.)  Indeed, the Court has *not* based the above recommendations on successor liability—rather, it has looked to whether VisionPro still has feasible access to the information at issue through Romano, including the burden imposed on the company.

Thus, given that Respondent has not presented circumstances justifying filing a sur-reply, this request should be denied.  However, because the EEOC has presented arguments and information that were raised on reply but were not used to ground the undersigned's recommendation, the Court recommends striking or otherwise disregarding the EEOC's discussion or notion of successor liability at pages 2 through 6 in ECF No. 14.

### **CONCLUSION**

For the foregoing reasons, the undersigned recommends that the motions be decided as follows:

1. Petitioner's Motion to Compel **(ECF No. 1)** be (a) **granted** as to compliance with the subpoena requests for all New York and Connecticut facilities from October 1, 2020 through June 30, 2023 and (b) **denied** as to its request for costs to enforce the subpoena. Given that Romano is the only individual assisting in compiling the information, he shall have 60 days from the date of the determination of this Report & Recommendation to comply.

2. Respondent's Motion for Leave to File **(ECF No. 15)** be (a) **granted** as to disregarding claims of successor liability and (b) **denied** as to its request to file a sur-reply.

26

## **OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
            August 2, 2024

RESPECTFULLY RECOMMENDED:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge